MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2016 ME 37
Docket:        Pen-15-205
Argued:        February 11, 2016
Decided:       March 3, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
               HUMPHREY, JJ.

STATE OF MAINE

v.

LEANNA M. NORRIS

ALEXANDER, J.

[¶1]  Leanna M. Norris appeals from a judgment of conviction for murder, 17-A M.R.S. § 201(1)(A) (2015), entered by the trial court (Penobscot County, *A. Murray, J.*) after a jury-waived trial.  There is no dispute that on June 23, 2013, Norris caused the death of her two-year-old daughter by giving her a large dose of diphenhydramine, commonly known as "Benadryl," and then by physically suffocating her.  Following a dispute with the child's father, Norris formed a plan to cause her daughter's death, and over the course of approximately two hours drove from Auburn, to Waterville, to Palmyra, and to Newport, making stops along the way in furtherance of her plan and ultimately suffocating her daughter.

[¶2]  Norris contends that because she was suffering from major depressive disorder and other mental health problems when she caused her daughter's death,

the trial court erred by (1) finding that she did not prove, by a preponderance of the evidence, her affirmative defense that she was not criminally responsible by reason of a mental disease or defect, *see* 17-A M.R.S. §§ 39, 101(2) (2015); and (2) finding, beyond a reasonable doubt, that her actions in killing her daughter were intentional or knowing. Because it was the trial court's responsibility to decide the weight and sufficiency of the evidence, and the record demonstrates no clear error in the trial court's findings, we affirm.

## I. CASE HISTORY

[¶3] The following facts are taken directly from the trial court's decision, and these facts, which the court found to have been proved beyond a reasonable doubt, are supported by competent record evidence. *See State v. Herzog*, 2012 ME 73, ¶¶ 2, 13, 44 A.3d 307.

[¶4] Norris, the child, and the child's father were living together at an apartment in Auburn. Between June 19 and June 23, 2013, Norris and the father had "argued, ended their relationship, resumed or attempted to resume their relationship, and then ended the relationship again." In the afternoon or evening of June 23, the father left the home. "Norris decided that she would suffocate [the child] and then kill herself, and she wanted to be near her parents' home when she did these acts." Before leaving the apartment, Norris collected duct tape, a bottle of diphenhydramine, and a syringe.

[¶5]  Norris stopped at a gas station to refuel her car and buy apple juice for her daughter.  Next, she drove to Waterville, where she bought the child a "Happy Meal" at McDonald's and a 200-count bottle of Advil at a supermarket.  Norris then drove to the parking lot of a store in Palmyra, where she gave the child a large dose of the diphenhydramine.  Norris drove for a while longer until the child had fallen asleep.

[¶6]  At a boat ramp near Newport, Norris turned off the road, parked, and got into the backseat with her daughter.  The child woke up.  Norris "put duct tape over [the child's] nose and mouth, and covered [the child's] face with a blanket."  "Norris then held her hand over [her daughter's] face."  The child "struggled a bit, but [Norris] kept her hand over [the child's] nose and mouth and suffocated her."

[¶7]  Norris "checked for [the child's] heartbeat and opened [her] eyelids to confirm she had died."  She placed the child's body in the front passenger seat and drove toward her parents' home.  Nearing her parents' home, she turned onto a remote road.  Norris took all 200 Advil pills and the remainder of the diphenhydramine, wrote a suicide note, and prepared a "mask" from the duct tape.  She then "drove to a nearby cemetery, put the duct-tape mask on her face and tried to suffocate herself."

[¶8]  "Although [she made] a genuine suicide attempt," Norris ultimately "awoke and vomited outside her car."  She "called her father and told him she had

4

killed [the child]," and repeated the same to her mother when her mother took the phone. Her mother convinced her to drive to their house. When Norris arrived, her father verified that the child had died. Norris "told her parents that they would be 'mad' at her," and she asked them for help in committing suicide. Her father called 9-1-1, and her parents kept her awake until emergency personnel arrived.

[¶9] Norris was transported to a local hospital. After she was treated, Norris was evaluated by a psychiatric consultant and was "admitted to Acadia Hospital due to suicidal ideation." "Shortly thereafter, [Norris] was transferred to [Pen Bay] Medical Center and a few days later was arrested." She was indicted on one count of intentional or knowing murder. *See* 17-A M.R.S. § 201(1)(A). At arraignment, Norris entered pleas of not guilty and not criminally responsible by reason of mental disease or defect.

[¶10] At the trial, four mental health professionals testified to their opinions regarding Norris's state of mind on the day that she killed her daughter. Three of these witnesses were qualified to testify as to diagnoses, and they agreed that Norris was suffering from major depressive disorder and social anxiety disorder, was suicidal, and was emotionally immature. All four professionals agreed that Norris was not psychotic or suffering from hallucinations or delusions on that day. Dr. Ann LeBlanc, a forensic psychologist from the State Forensic Service, testified that Norris had used reality-based reasoning and had reality-based motivations for

killing the child. She testified that depression and anxiety disorders generally do not prevent a person from knowing right from wrong. Dr. Charles Robinson, a psychologist presented by Norris, testified that Norris believed that killing the child was "right," in part because she believed that the two of them would be together forever after Norris killed herself. He testified that Norris "was not accurately perceiving reality" as a result of her mental health conditions.

[¶11] After discussing the expert testimony at length, the court found that Norris had not met her burden to prove, by a preponderance of the evidence, that she was not criminally responsible by reason of a mental disease or defect. The court affirmatively found that Norris was not suffering from "a mental disease or defect that grossly and demonstrably impaired her perception or understanding of reality," as the term is defined by 17-A M.R.S. § 39(2),[1] and it further found that

[1] Norris relies on a statement in the judgment—"there is no question that Ms. Norris had a mental disease or defect on June 23, 2013"—to argue that the court made a finding that she had satisfied that element of her affirmative defense. However, the complete sentence from which Norris quotes is as follows: "While there is no question that Ms. Norris had a mental disease or defect on June 23, 2013, the question is whether Ms. Norris's mental disease or defect grossly and demonstrably impaired her perception or understanding of reality such that she lacked substantial capacity to appreciate the wrongfulness of her conduct." *See* 17-A M.R.S. § 39(1)-(2) (2015). The court went on to thoroughly review various points of evidence and the expert testimony offered on the issue. The court then stated: "The Court finds the following facts and finds that they demonstrate that Ms. Norris *did not have a mental disease or defect that grossly and demonstrably impaired her perception or understanding of reality on June 23, 2013*" (emphasis added), listing dozens of bulleted facts supporting that finding. Thus, the court expressly found that Norris did not have a mental disease or defect as that term is defined by section 39(2) ("As used in this section, 'mental disease or defect' means only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality.").

6

she did not lack the substantial capacity to appreciate the wrongfulness of her conduct, *see* 17-A M.R.S. § 39(1).

[¶12]  The court adjudged Norris guilty of murder, sentenced her to a term of thirty-seven years of imprisonment, and ordered her to pay restitution for funeral costs and a mandatory surcharge that is imposed on all convictions.  Norris brought this timely appeal.  *See* 15 M.R.S. § 2115 (2015); M.R. App. P. 2.  She also filed for leave to appeal from her sentence, which the Sentence Review Panel denied on August 3, 2015.  *See* 15 M.R.S. §§ 2151-2157 (2015); M.R. App. P. 20.

## II.  LEGAL ANALYSIS

[¶13]  Norris contends that the record compels the finding that she proved her affirmative defense of not criminally responsible by reason of a mental disease or defect.

[¶14]  "Lack of criminal responsibility by reason of insanity is an affirmative defense," 17-A M.R.S. § 39(3), and, therefore, "the matter so designated must be proved by the defendant by a preponderance of the evidence," 17-A M.R.S. § 101(2).  Whether a defendant has met his or her burden of proof on this issue is a question of fact, and, if the fact-finder decides that the defendant has not met the burden of proof, we will disturb that finding "only if the record compels a contrary conclusion."  *State v. Gurney*, 2012 ME 14, ¶ 46, 36 A.3d 893; *see also State v. Abbott*, 622 A.2d 723, 726 (Me. 1993).  We must "review the evidence, and any

reasonable inferences that may be drawn from it, most favorably to the result reached by the trial court." *Gurney*, 2012 ME 14, ¶ 44, 36 A.3d 893.

[¶15] "A defendant is not criminally responsible by reason of insanity if, at the time of the criminal conduct, as a result of a mental disease or defect, the defendant lacked substantial capacity to appreciate the wrongfulness of the criminal conduct." 17-A M.R.S. § 39(1). "As used in [section 39], 'mental disease or defect' means only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality." 17-A M.R.S. § 39(2). Thus, a defendant is not criminally responsible if, at the time of the criminal conduct, he or she lacked the substantial capacity to appreciate the wrongfulness of the conduct because of a severely abnormal mental condition that grossly and demonstrably impaired the person's perception or understanding of reality. 17-A M.R.S. § 39(1)-(2).

[¶16] The record does not compel a finding that Norris proved her affirmative defense. In 1979, in *State v. Ellingwood*, we stated:

> This line between normal, but criminal, behavior, and abnormal behavior, excusing one of criminal responsibility, must be drawn by the ultimate fact-finder on the basis of a complex evaluation of moral, legal and medical judgments. That decision will only rarely be reversed by an appellate court upon a strong showing that no reasonable fact-finder could conclude otherwise than that the defendant lacked criminal responsibility for his conduct.

409 A.2d 641, 646 (Me. 1979). As in *Ellingwood*, this is not a case that can qualify for a reversal on appeal, for three reasons. *See id.*

[¶17] First, the record fully supports the court's finding that Norris's mental health conditions, although serious, did not grossly and demonstrably impair her perception or understanding of reality, as the findings and evidence set forth above amply demonstrate. The evidence indicates that over the course of approximately two hours, Norris had formed the goal of killing her child, had reality-based reasons supporting her goal, formed a plan that would accomplish the goal, and carried out each step necessary to accomplish the goal. At all times, Norris knew where she was, who she and her child were, and what Norris was doing. Thus, the record does not compel a finding that Norris suffered from a mental disease or defect as section 39(2) defines the term. *See Gurney*, 2012 ME 14, ¶¶ 28, 47, 36 A.3d 893.

[¶18] Second, even if the record did compel a finding on that point, the record does not compel a finding that Norris lacked the substantial capacity to appreciate the wrongfulness of her actions. The court's finding to the contrary is supported by ample record evidence, including expert testimony and statements made by Norris herself. *See State v. Lane*, 532 A.2d 144, 145 (Me. 1987) (concluding that the trial court did not err in finding that a defendant had not proved that he lacked the substantial capacity to appreciate the wrongfulness of his

actions when historical facts and expert testimony supported the finding, in spite of expert testimony to the contrary).

[¶19]   Finally, the record supports the court's finding that Norris intentionally or knowingly caused the death of her daughter by administering a large dose of diphenhydramine and by obstructing her nose and mouth with duct tape and Norris's hand.  *See* 17-A M.R.S. §§ 35(1)(A)*,* 35(2)(A), 201(1)(A) (2015).  Although Norris attempted to raise a reasonable doubt as to the existence of a culpable state of mind*, see* 17-A M.R.S. §§ 38, 101(1) (2015), the record supports the court's finding that Norris was not suffering from an abnormal condition of the mind that raised a reasonable doubt as to whether she acted knowingly or intentionally.  *See State v. Estes*, 418 A.2d 1108, 1117 (Me. 1980) ("[T]he question is not the precise nature of the abnormality but whether the abnormality, whatever its character, raises a reasonable doubt as to whether the defendant possessed the requisite culpable state of mind for the particular offense charged.").

The entry is:

Judgment affirmed.

**On the briefs:**

Hunter J. Tzovarras, Esq., Bangor, for appellant Leanna M. Norris

Janet T. Mills, Attorney General, and Donald W. Macomber, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State of Maine


**At oral argument:**

Hunter J. Tzovarras, Esq., for appellant Leanna M. Norris

Donald W. Macomber, Asst. Atty. Gen., for appellee State of Maine


Penobscot County Unified Criminal Docket docket number CR-2013-2496
FOR CLERK REFERENCE ONLY